**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOSHUA BATISTA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WELLS FARGO BANK N.A., *et al.*,**<br><br>**Defendants.** | **Civil Action No.: 25-19131 (ES) (ADS)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is Wells Fargo Bank N.A.'s ("Wells Fargo")[1] motion to dismiss *pro se* Plaintiff Joshua Batista's ("Plaintiff") Complaint, (D.E. No. 1 ("Compl." or "Complaint")), under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. No. 11 ("Mot." or "Motion")). Having considered the parties' submissions, the Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Wells Fargo's motion to dismiss Plaintiff's Complaint *with prejudice* is **GRANTED**.

## I. BACKGROUND

On November 3, 2020, Plaintiff opened a consumer credit card account with Wells Fargo (the "Account") governed by the Wells Fargo Active Cash Credit Card Agreement (the "Agreement"). (Compl. ¶¶ 8–9; D.E. No. 1-2 at 1 (ECF Pagination) ("Plaintiff's Exhibit A" or

---

[1] Defendants Tenaglia & Hunt, P.A. and Mykola Kotko answered the complaint and did not join Wells Fargo's motion to dismiss. (*See* D.E. Nos. 9 & 11). For the sake of clarity, none of the rulings herein apply to Tenaglia & Hunt, P.A. or Mykola Kotko.

"Pl. Ex. A")).[2] On October 31, 2023, Wells Fargo closed the Account, due to Plaintiff's alleged failure to make payments pursuant to the Agreement. (Compl. ¶ 12; Mot. at 4). Subsequently, Wells Fargo commenced a debt collection action against Plaintiff in the Superior Court of New Jersey. (D.E. No. 1-2 at 15 (ECF Pagination) ("State Court Compl." or "State Court Complaint")). At that time, there was an outstanding balance of $6,868.64 due and owing on the Account. (Compl. ¶ 13; State Court Compl. at 2).

On January 18, 2024, Plaintiff filed a motion to dismiss Wells Fargo's State Court Complaint for lack of jurisdiction, alleging the Agreement contained arbitration provisions requiring the parties to resolve disputes through arbitration. (D.E. No. 11-4).[3] The court denied Plaintiff's motion. (D.E. No. 11-5 at 3 (ECF Pagination)). On May 5, 2025, Wells Fargo and Plaintiff each moved for summary judgment. (*Id.* at 5 (ECF Pagination)). On May 27, 2025, the Superior Court of New Jersey denied Plaintiff's motion and granted Wells Fargo's, awarding Wells Fargo a final judgment in the amount of $6,868.64. (D.E. Nos. 11-7 & 11-8).

Plaintiff moved to vacate the Superior Court's decision granting Wells Fargo's motion for summary judgment, which the court subsequently denied. (D.E. Nos. 11-9 & 11-10). Plaintiff then moved for reconsideration, which the Superior Court also denied. (D.E. Nos. 11-11 & 11-

---

[2] Plaintiff alleges that "[o]n or about May 24, 2023" the Account was converted from a Wells Fargo Propel Credit Card to a Wells Fargo Active Cash Credit Card, and thus, the governing agreement converted from the Wells Fargo Propel American Express Card Agreement to the Wells Fargo Active Cash Credit Card Agreement. (Compl. ¶¶ 10–11). For the purposes of this action, both agreements are interchangeable, containing "materially identical" arbitration provisions. (*Id.* ¶¶ 9–11; *see also* Pl. Ex. A at 3, 5–6).

[3] In addition to the pleadings and those documents attached to the pleadings, the Court considers documents attached as exhibits to Wells Fargo's motion to dismiss. *See Moore v. Beers*, 121 F. Supp. 3d 425, 430 (D.N.J. 2015) ("[A] court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice" except where there is "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993))). Plaintiff has not challenged the authenticity of Wells Fargo's exhibits to their motion to dismiss, and Plaintiff's claims are based, in part, thereon. Further, this Court also considers these exhibits as matters of public record. *See Genova v. Total Card, Inc.*, 193 F. Supp. 3d 360, 364 (D.N.J. 2016) (noting that "[a] court may also consider and take judicial notice of matters of public record," on a motion to dismiss).

12).

Next, Plaintiff filed a demand for arbitration with the American Arbitration Association ("AAA") against Wells Fargo. (D.E. No. 11-13). In opposition to this demand, Wells Fargo submitted a letter asserting that the submission to the AAA represented an "improper, collateral attack on a completed case." (D.E. No. 11-14 at 2 (ECF Pagination)). On September 26, 2025, the AAA administratively closed the arbitration proceeding due to non-payment. (D.E. No. 11-15).

On December 30, 2025, Plaintiff commenced this action. (*See generally* Compl.). Plaintiff asserts five causes of action in the Complaint, including claims for violations of the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. §§ 1692e–k (Count I); violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681s-2(b), n, & o (Count II); breach of contract (Count III); breach of the implied covenant of good faith and fair dealing (Count IV); and identity theft, unauthorized use of personal identifying information, and misappropriation of propriety source data (Count V). (*Id.* ¶¶ 82–188). At the crux of most of Plaintiff's claims is the contention that Wells Fargo violated the Agreement by neglecting to resolve Account-related disputes through arbitration. (*See generally id.*). Plaintiff alleges that, as a result of the foregoing, he suffered $10,000,000 in damages. (*Id.* ¶ 189).

Wells Fargo's motion is fully briefed, and the Court has carefully considered the parties' submissions. (Mot.; D.E. No. 13 ("Opp. Br."); D.E. No. 14 ("Reply Br.")).

## II. LEGAL STANDARD

Wells Fargo seeks to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. Each requires a different standard of review. *See Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999) (citing cases).

**A. Rule 12(b)(1)—Lack of Subject Matter Jurisdiction**

Federal courts have limited jurisdiction and are permitted to adjudicate cases and controversies only as permitted under Article III of the Constitution. *See* U.S. Const. art. III, § 2; *see also Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322–23 (3d Cir. 1998) ("The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief."). Unless affirmatively demonstrated, a federal court is presumed to lack subject matter jurisdiction. *See Ridge*, 150 F.3d at 323 (citing *Renne v. Geary*, 501 U.S. 312, 316 (1991)). The party seeking to invoke federal jurisdiction has the burden of persuasion to establish subject-matter jurisdiction. *See Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). Under Federal Rule of Civil Procedure 122(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

A motion to dismiss under Rule 12(b)(1) "attacks . . . the right of a plaintiff to be heard in Federal court." *Kurtzman*, 45 F. Supp. 2d at 428. When ruling on such a motion, a distinction must be made between a facial and factual attack. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). If the Rule 12(b)(6) motion is a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). On the other hand, when the Rule 12(b)(1) motion is a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891.

Here, Wells Fargo's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is a factual attack because it challenges the "actual facts" that support jurisdiction, and

not merely how those facts were pleaded. *U.S. ex rel. Atkinson*, 473 F.3d at 514. Accordingly, the Court may "review evidence outside the pleadings" in determining whether subject matter jurisdiction exists. *Id.*

**B. Rule 12(b)(6)—Failure to State a Claim**

"Rule 12(b)(6) requires a district court to dismiss a complaint if it fails to state a cognizable legal claim." *Ulferts v. Franklin Res., Inc.*, 554 F. Supp. 2d 568, 572 (D.N.J. 2008). To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. Additionally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Finally, courts must construe complaints liberally in favor of a *pro se* plaintiff. *See Higgs*

*v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("Our policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training."). That said, the Court is not required "to credit bald assertions or legal conclusions: '[p]ro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Tucker v. Univ. of Science, Arts & Tech., College of Medicine*, No., 2025 WL 1384313, at *1 (D.N.J. May 12, 2025) (alteration in original) (quoting *Griffin v. State Dep't of Human Servs.*, No. 18-14697, 2019 WL 3369783, at *2 (D.N.J. Jul. 26, 2019)). "Even a pro se complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Griffin*, 2019 WL 3369783, at *2.

## III. DISCUSSION

Wells Fargo moves to dismiss Plaintiff's Complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction, and additionally, under Rule 12(b)(6) for failure to state a claim for which relief may be granted. (*See generally* Mot.). Specifically, Wells Fargo argues that this Court should dismiss Plaintiff's Complaint because it is barred by the *Rooker-Feldman* doctrine. (*Id.* at 15–19). Additionally, Wells Fargo contends that Plaintiff's claims should be dismissed as barred by *res judicata*, collateral estoppel, and the Entire Controversy Doctrine. (*Id.* at 8–14). In the alternative, Wells Fargo argues that Plaintiff has failed to sufficiently allege the causes of action at issue. (*Id.* at 19–28). The Court begins with Wells Fargo's *Rooker-Feldman* argument.

### A. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine bars federal district courts from hearing cases "that are essentially appeals from state-court judgments," such that "a favorable decision in federal court

would require negating or reversing the state-court decision." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165, 170 n.4 (3d Cir. 2010). It is implicated when, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) (citations omitted).

For the *Rooker-Feldman* doctrine to apply, four requirements must be met: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co.*, 615 F.3d at 166 (cleaned up) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

As a threshold matter, the Court finds that the first requirement is met, as Plaintiff was the losing party in the prior state court action, wherein the Superior Court entered summary judgment in Wells Fargo's favor. (*See* D.E. No. 11-8).

Regarding the second requirement, "an injury must in fact be caused by the state court judgment itself, rather than the actions of another entity—even if that other entity is a party to the state court proceedings." *Luft v. Clerk of the Superior Ct. of New Jersey*, No. 19-11728, 2020 WL 967857, at *3 (D.N.J. Feb. 28, 2020) (citations omitted). In his Complaint, Plaintiff asserts that Wells Fargo violated the FDCPA by "[m]isrepresenting the legal status and enforceability of the alleged debt" and commencing the state court action, (Count I); breached the Agreement by commencing the state court action instead of pursuing arbitration, (Count III); acted in bad faith by "weaponiz[ing] the arbitration framework" in the Agreement, (Count IV); and participated in the "unauthorized assumption, use, or control" of Plaintiff's data, (Count V). (Compl. ¶¶ 82–94,

111–188). Each of these claims of injury originates out of the state court action, as Plaintiff takes issue with the very existence of the state court action. Even Plaintiff's claim regarding the "unauthorized use of [his] data," which is little more than a vague generalization, hinges on asserting debt collection claims against Plaintiff in the state court action and the transmission of Plaintiff's data to "third parties," which he identifies as the other two defendants in this case who also represented Wells Fargo in the state court action. (*See id.* ¶ 176). Indeed, the remedy Plaintiff seeks from this Court for these claims would invalidate the Superior Court's judgment against Plaintiff. Thus, the second requirement is met for Counts I, III, IV, and V because these claims seek to redress Plaintiff's alleged injuries caused by the decision of the New Jersey Superior Court in the prior action.

As for Count II, Plaintiff alleges that Wells Fargo violated the FCRA because it failed to conduct a reasonable investigation regarding the defaulted Account. (*Id.* ¶¶ 95–110). Because this claim represents an alleged injury caused by Wells Fargo and does not arise out of the state court judgment, Count II is not barred by the *Rooker-Feldman* doctrine.

Turning back to Counts I, III, IV, and V, the third requirement for application of the *Rooker-Feldman* doctrine is also met as Plaintiff commenced this action on December 30, 2025, several months after the Superior Court granted summary judgment in Wells Fargo's favor. (Compl.; D.E. No. 11-8); *see also Ayres-Fountian v. E. Sav. Bank*, 153 F. App'x 91, 92 (3d Cir. 2005) (holding the *Rooker-Feldman* doctrine applied to deprive the District Court of jurisdiction over claims arising out of a state court's grant of summary judgment).

Finally, the fourth requirement for *Rooker-Feldman* applicability requires that the federal action be "so inextricably intertwined [with the state court action] that a 'favorable decision in federal court would require negating or reversing the state-court . . . judgment.'" *Duffy v. Wells*

*Fargo Bank, N.A.*, No. 16-4453, 2017 WL 2364196, at *7 (D.N.J. May 31, 2017) (quoting *Great W. Mining & Mineral Co.*, 615 F.3d at 170 n.4). Here, the state court action resulted in a judgment that Plaintiff owed Wells Fargo $6,868.64. (D.E. No. 11-8). In the course of that action, Plaintiff presented the Superior Court with his argument that the matter was subject to binding arbitration. (D.E. No. 11-4). Despite this argument, the Superior Court granted summary judgment in favor of Wells Fargo. (D.E. No. 11-8). Therefore, as Counts I, III, IV, and V rest on the claim that the state court action should never have happened, and instead the parties should have arbitrated the dispute, it essentially seeks to overturn the state court judgment. Thus, the fourth *Rooker-Feldman* requirement is satisfied. Accordingly, the Court finds that Counts I, III, IV, and V are barred by the *Rooker-Feldman* doctrine.

**B. Preclusion**

The Court also finds that, even if the *Rooker-Feldman* doctrine did not bar Plaintiff's claims, they would still be subject to dismissal under the doctrines of *res judicata*, collateral estoppel, and New Jersey's Entire Controversy Doctrine.

***1. Res Judicata***

Under New Jersey law,[4] *res judicata*, or claim preclusion, will prevent a litigant from relitigating disputes that had been resolved in an earlier proceeding if three requirements are met:

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later

[4] Whether a state court judgment should have a preclusive effect in a subsequent federal action depends on the law of the state that adjudicated the original action. *See Walker v. Horn*, 385 F.3d 321, 337 (3d Cir. 2004) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984))). Thus, the Court must apply New Jersey law to determine the preclusive effect of the underlying state court judgment in the present case. This applies to the Court's *res judicata*, collateral estoppel, and Entire Controversy Doctrine analyses.

> action must grow out of the same transaction or occurrence as the claim in the earlier one.

*Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 124 N.J. 398, 412 (1991) (citations omitted). Regarding the "transaction or occurrence" prong, the Court elaborated, noting that "[c]laim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." *Id.*

If those three requirements are met, then the doctrine bars "the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted); *Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.") (citation omitted); *Watkins*, 124 N.J. at 412 ("Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." (citation omitted)).

Wells Fargo argues that the doctrine of *res judicata* bars Plaintiff's Complaint because "his claims regarding the Agreement's arbitration provision were already decided by the State Court, and his remaining causes of action could have been raised in the State Court Action." (Mot. at 8). Plaintiff responds asserting that the doctrine does not apply because the allegations concern Wells Fargo's "later misconduct" for independent statutory violations. (Opp. Br. 8–9).

Turning to the first prong of the claim preclusion inquiry—that the judgment in the prior action be valid, final, and on the merits—the Court agrees with Wells Fargo. (*See* Mot. at 10). Here, the New Jersey Superior Court granted Wells Fargo's motion for summary judgment. (*See* D.E. No. 11-8). That state court judgment constitutes a final adjudication on the merits. *See*

*Hubicki v. ACF Indus., Inc.*, 484 F.2d 519, 524 (3d Cir. 1973) (stating that a summary judgment is a final judgment on the merits for the purposes of *res judicata*).

The second prong, the identity of the parties in both actions, is likewise satisfied in this case. Plaintiff and Wells Fargo were both adverse parties in the state court action. (*See* State Court Compl.). Therefore, the Court finds that the second prong of the *res judicata* inquiry has been met.

Finally, the Court considers whether the instant suit is based on the same transaction or occurrence as the state court action. *Watkins*, 124 N.J. at 412. The underlying set of facts giving rise to Plaintiff's claims in both cases are identical. In both his federal Complaint and state motion to dismiss, Plaintiff alleges that Wells Fargo improperly brought the action in state court because the parties were subject to a binding arbitration agreement. (Compl.; D.E. No. 11-4). For instance, Counts I (in part), III, and IV in this case are based on Wells Fargo seeking relief in the Superior Court rather than through arbitration. (Compl. ¶¶ 82–94, 111–165). The balance of Count I is premised on Wells Fargo's standing to pursue the debt at issue in the Superior Court action. (*Id.* ¶¶ 86–88). As for Count II, Plaintiff argues that Wells Fargo had a duty to reasonably investigate the dispute on the Account and breached that duty. (*Id.* ¶¶ 95–110). This debt-related claim was relevant to and could have been asserted as a counterclaim in the state court action. *See Watkins*, 124 N.J. at 412. Similarly, Plaintiff could have asserted the claims set forth in Count V, which appear to be based on Wells Fargo's use of his personal information for commercial purposes, including its efforts to collect the debt at issue in the state court action. (Compl. ¶¶ 166–188). The

Court is persuaded that the material facts are extremely similar in both cases. Thus, the Court finds that the third prong of the *res judicata* inquiry is satisfied.

The Court finds that the prior state court proceeding concerned the same transaction or occurrence and parties as the instant action, and that the Superior Court entered a final judgment on the merits in that case. The Court accordingly holds that the doctrine of *res judicata* bars Plaintiff's claims against Defendant in this case.

**2. Collateral Estoppel**

Similar to *res judicata*, collateral estoppel is a preclusive doctrine that bars the litigation of facts fully litigated and actually determined in a prior action involving a different claim or cause of action. *See Tarus v. Pine Hill*, 189 N.J. 497, 520 (2007) ("Collateral estoppel, in particular, represents the 'branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.'" (quoting *Sacharow v. Sacharow*, 177 N.J. 62, 76 (2003))).

As noted, several of Plaintiff's claims are based on his allegation that Wells Fargo improperly sought relief regarding the underlying debt in the New Jersey Superior Court, rather than through arbitration proceedings. The Superior Court considered, and rejected, Plaintiff's arbitration argument when resolving his motion to dismiss in the state court action. (D.E. No. 11-5 at 3 (ECF Pagination)). The state court action ended in a final judgment on the merits. All of Plaintiff's arbitration-related claims are, therefore, also barred pursuant to the doctrine of collateral estoppel.

**3. Entire Controversy Doctrine**

The New Jersey Supreme Court has declared that the Entire Controversy Doctrine "'requires parties to a controversy before a court to assert all claims known to them that stem from

the same transactional facts, even those against different parties.'" *Harley Davidson Motor Co. v. Advance Die Casting, Inc.*, 150 N.J. 489, 497 (1997) (quoting *Joel v. Morrocco*, 147 N.J. 546, 548 (1997)). A party must join all claims which "arise[] from a core set of related factual circumstances" in a single action. *DiTrolio v. Antiles*, 142 N.J. 253, 272 (1995). The doctrine pertains to "'virtually all causes, claims, and defenses relating to a controversy.'" *Oliver v. Ambrose*, 152 N.J. 383, 394 (1998) (quoting *Cogdell v. Hosp. Ctr. at Orange*, 116 N.J. 7, 16 (1989)). Failure to join a claim or party as required by the entire controversy doctrine "shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . . ." *Id.* (quoting N.J. Ct. R. 4:30A).

Here, each of Plaintiff's claims alleges wrongdoing on the part of Wells Fargo during the events leading up to the state court action, and the filing of the action itself. (*See generally* Compl.). To reiterate, Plaintiff claims Wells Fargo improperly addressed the dispute on Plaintiff's Account and improperly commenced the state court action. (Compl. ¶¶ 82–188). Each claim arises from the same set of operative facts giving rise to the state court action and concerns issues previously adjudicated in that action, including whether Plaintiff owed the disputed debt and whether the parties were compelled to arbitrate their dispute. Thus, Plaintiff "knew, or should have known about" each claim during the state court action. *See Napoli v. HSBC Mortg. Servs.*, No. 12-222, 2012 WL 3715936, at *3 (D.N.J. Aug. 27, 2012). Accordingly, each of Plaintiff's claims in this case is barred by the Entire Controversy Doctrine.

**C. Failure to State a Claim**

In the alternative to its *Rooker-Feldman* and preclusion arguments, Wells Fargo argues that Plaintiff's claims fail because he has failed to allege facts establishing a plausible entitlement to relief. (Mot. at 19–28). Because the Court has found that Plaintiff's claims fail pursuant to *res*

*judicata*, collateral estoppel, and New Jersey's Entire Controversy Doctrine, the Court does not reach Wells Fargo's alternative arguments for dismissal.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that each of Plaintiff's claims in this action are barred by either the *Rooker-Feldman* doctrine or by some combination of the *res judicata*, collateral estoppel, and New Jersey Entire Controversy doctrines. The Court will, therefore, GRANT Wells Fargo's motion to dismiss. As Plaintiff cannot save those claims via amendment, the Court will dismiss Plaintiff's Complaint *with prejudice*. An appropriate Order accompanies this Opinion.

Dated: September 28, 2026

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**